## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LEANNA DEMARCO,
GABRIELLA HOWARD, and
ALITA MULVEY,

      Plaintiffs,

      v.

BETH ISRAEL LAHEY HEALTH, INC.,
NORTHEAST HOSPITAL
CORPORATION and BETH ISRAEL
DEACONESS MEDICAL CENTER, INC.,

      Defendants.

Civil Action No.:

## COMPLAINT AND JURY TRIAL DEMAND

## I. PARTIES

1. Plaintiff, Leanna Demarco, (hereinafter, "Demarco") is a resident of Beverly, Massachusetts and was employed as a Float Pool Registered Nurse at Northeast Hospital Corporation at the Beverly Hospital campus located in Beverly, Massachusetts.

2. Plaintiff, Gabriella Howard, (hereinafter, "Howard") is a resident of Hudson, New Hampshire and was employed as a Registered Nurse at Beth Israel Lahey Health, Inc., at its facility in Burlington, Massachusetts.

3. Plaintiff, Alita Mulvey, (hereinafter, "Mulvey") is a resident of Duxbury, Massachusetts and was employed as a Registered Nurse Case Manager by Beth Israel Medical Center, Inc.

1

4. Collectively, the three (3) named Plaintiffs will be referred to as "Plaintiffs", unless the context requires otherwise.

5. Defendant, Beth Israel Lahey Health, Inc., (hereinafter, "BILH") is a duly organized Massachusetts corporation allegedly for charitable, scientific and educational purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code and has been formed to "maintain and operate charitable hospitals and services associated with charitable hospitals, to advance education and research in providing care to the sick and injured and in training health care professionals, and to promote the general health of the community". BILH has a principal office location of 20 University Road, Suite 700, Cambridge, Massachusetts, 02138.

6. BILH is the second largest healthcare system in Massachusetts and contains a number of affiliated hospitals, which are operated and administered in part, in common.

7. Defendant Northeast Hospital Corporation, (hereinafter, "NHC") is a corporation exclusively for charitable, scientific and educational purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code and has been formed to "maintain and operate charitable hospitals and services associated with charitable hospitals, to advance education and research in providing care to the sick and injured and in training health care professionals, and to promote the general health of the community". NHC has a principal office location of 85 Herrick Street, Beverly, Massachusetts 01915.

8. Defendant Beth Israel Medical Center, Inc. (hereafter, "BIDMC") is a corporation with the object of providing medical and hospital services for the sick and disabled

with a principal office location of 330 Brookline Avenue, Boston, Massachusetts 02105.

9. The Defendants NMC and BIDMC are affiliates and subsidiaries of the Defendant BILH and BILH has, at all relevant times, depicted in this matter participated with said Defendants NMC and BIDMC with respect to the facts alleged herein and specifically with the establishment and application of policies and procedure relative to requiring employees to receive the COVID-19 Vaccine as a condition of remaining employed, including definition and procedure relating to exemptions for religious beliefs.

10. The Defendants BILH, NMC and BIDMC are collectively herein referred to as "Defendant" or "Defendants", as the context requires unless otherwise specifically stated.

## II.  JURISDICTION

11. The Court has jurisdiction in this matter pursuant to 42 U.S.C § 1983 and Sec 2000e-5 (f) and 28 U.S.C §§ 2201, 2202 and Sec 1331 and 1343 (a) and has supplemental jurisdiction over State law claims.

## UNITED STATES EQUAL OPPORTUNITY COMMISSION ("EEOC") CHARGE

12. The Plaintiffs filed timely charges with the EEOC. The EEOC has issued the Plaintiffs their "Right to Sue" letters. The Plaintiffs brought this lawsuit within ninety (90) days of receipt of Howard's right-to-sue notice. All preconditions for filing this lawsuit have been performed or have occurred (**Exhibit 1**).

### III.  FACTS

13. All of the Defendants are employers within the meaning of 42 U.S.C. Sec 2000e (b) and M.G.L. C 151B, Sec1(5).

14. Commensurate with the outbreak of the COVID-19 virus (hereinafter, "COVID-19") and continuing to date, Defendants issued a number of policies with respect to their employees, patients and visitors with the stated goal of protecting all of same from the ravages of COVID-19, including the prospect of contracting and/or spreading same.

15. During the entire period since the outbreak of COVID-19, the Defendant hospitals were especially affected as all areas of same were deluged with patients suffering from COVID-19 in their emergency rooms, intensive care units and throughout all other areas of their facilities.

16. Consequently, Defendants mandated that all their employees wear face masks and other personal protective equipment stating the reason that doing so was the best way to minimize the spread of such disease.

17. Without employees such as the Plaintiffs working at Defendants' facilities and being directly exposed to the dire risk of contracting COVID-19, Defendants could not have operated and would have suffered dire financial ruin.

18. Plaintiffs, in reliance on Defendants' assurances that they and their families were protected by wearing face masks, complied, continued to work and were all directly subjected to contracting COVID-19 at its zenith.

19. In August of 2021, Defendants announced a "Mandatory Vaccine Policy" which required all of their employees to have been injected by the COVID-19 vaccine or to have at least commenced a two (2) dose vaccine regimen by October 31, 2021.

20. In the event that any employee failed to strictly comply with Defendants' policy, the employee would be placed on a fourteen (14) day unpaid administrative leave until they complied and took the injections.

21. In the event that the employee failed to comply with injections by the end of the unpaid administrative period, Defendants unilaterally concluded that the employee "voluntarily terminated" their employment.  Despite the self-serving label by Defendants, this means, and was, termination.

22. The Mandatory Vaccine Policy did have a provision for employees to apply for certain exemptions, including an Exemption due to an employee's sincerely held religious beliefs, by October 1, 2021

23. Under such policy, employees that applied for a religious exemption were not to be placed on administrative leave or deemed to have voluntarily terminated their employment pending determination of the exemption request.

24. Defendants predetermined that they would accept few, if any, religious exemptions to the mandate to take COVID-19 vaccine injections.

25. Defendants predetermined that they would not offer or accept any request for accommodations relative to a medical or religious exemption request.

26. Plaintiffs never voluntarily ended their employment with Defendants.

27. Accordingly, Defendants could not have, and did not, engage in any meaningful interactive process for the purpose of accommodating applicants for either medical or religious exemptions.

28. Upon information and belief, prior to the issuance of the policies and mandates set forth herein, BILH worked in co-operation with Johnson & Johnson, one of the manufacturers of the COVID-19 vaccines that Defendants mandated upon the Plaintiffs and other manufacturers of the said vaccine, in the development of such vaccines including testing same for effectiveness.

29. Upon information and belief, BILH has direct knowledge that the Johnson & Johnson and other like vaccines are ineffective for their intended purpose and, including the intended purpose of the Vaccine Policy issued by the Defendants set forth herein and have specific direct knowledge that fully vaccinated people can still be infected with the COVID-19 virus and still spread said virus.

30. Upon information and belief, BILH has direct knowledge of potential risks, side effects and harm to the recipient of such vaccine that BILH did not disclose to Plaintiff at or after subjecting the Plaintiff to the Vaccine policy.

31. Demarco was a registered nurse at NHC.

32. Demarco timely submitted her application for Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer due to her sincerely held religious beliefs. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on April 21, 2022.

6

33. Demarco filed claims with EEOC and was provided a "Right to Sue" letter dated March 14, 2023.

34. Demarco suffered damages as a result of Defendants actions including, but not limited to, lost wages, lost benefits, costs related to survival without income from work with Defendant as well as stress to herself and her family.

35. Demarco requested accommodations from Defendants, which were not approved.

36. Howard was a Registered Nurse at BILH.

37. Howard timely submitted her application for Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer due to her sincerely held religious beliefs. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on November 14, 2021.

38. Howard filed claims with the Massachusetts Commission Against Discrimination ("MCAD") and was provided a "Right to Sue" letter dated February 3, 2023.

39. Howard suffered damages as a result of Defendants' actions including, but not limited to, lost wages, lost benefits, costs related to survival without income from work with Defendant as well as stress to herself and her family.

40. Howard requested accommodations from Defendants, which were not approved.

41. Mulvey was a Registered Nurse at BIDMC.

42. Mulvey timely submitted her application for Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer due to her sincerely held religious beliefs. She was placed on an unpaid fourteen (14) day

7

administrative leave, her Religious Exemption was denied, and she was wrongfully

terminated by Defendants on July 6, 2022.

43. Mulvey filed claims with EEOC and was provided a "Right to Sue" letter dated

February 16, 2023.

44. Mulvey suffered damages as a result of Defendants actions including, but not

limited to, lost wages, lost benefits, costs related to survival without income from

work with Defendant as well as stress to herself and her family.

45. Mulvey requested accommodations from Defendants, which were not approved.

46. Defendants did not engage in any meaningful process with any of the Plaintiffs to

determine whether it could accommodate Plaintiff's requests and simply denied

Plaintiffs' requests indicating that Plaintiffs' requests created an undue hardship on

Defendants while asserting that Plaintiffs' proposals were inferior to the vaccine in

achieving the goals of the mandate. Defendants followed the denial with

termination of each of the Plaintiffs' employment.

47. Following an announcement by the Food and Drug Administration ("FDA") on

August 2, 2021, claiming that vaccines were ninety-one percent (91%) effective in

preventing COVID-19 (Pfizer), it became immediately clear that was not true.

48. Illustrating by example are the following list of visible persons that became affected

by COVID-19 despite having been injected by a COVID-19 vaccine along with the

date their infection was announced:

08-19-2021   U.S. Senator John Hickenlooper

U.S. Senator Angus King

U.S. Senator Roger Wicker

8

10-19-2021    Dept Homeland Security Secretary Alejandro Mayorkas

12-19-2021    U.S. Senator Elizabeth Warren

01-02-2022    Dept of Justice Secretary Lloyd Austin

03-13-2022    U.S. President Barack Obama

03-31-2022    CIA Director William Burns

04-05-2022    U.S. Attorney General Merrick Garland

04-07-2022    U.S. House Speaker Nancy Pelosi

04-09-2022    U.S. Dept of Agriculture Secretary Tim Vilsack

04-26-2022    U.S. Vice-President Kamala Harris

05-04-2022    U.S. Secretary of State Anthony Blinken

06-01-2022    U.S. Labor Secretary Marty Walsh

06-15-2022    Dr. Anthony Fauci

06-2022       U.S. Senator Wicker for 3rd time (02-2022)

07-10-2022    U.S. Senate Majority Leader Charles Schumer

07-21-2022    U.S President Joseph Biden

10-22-2022    CDC Director Rochelle Walensky

49. Public Health Officials now acknowledge the fallacy of claims of protection

afforded by vaccines against COVID-19.

   a.   Dr. Deborah Birx (Former White House Coronavirus Response Coordinator):

        "I knew these vaccines were not going to protect against infection and I think we

        overplayed the vaccines". https:/youtu.be/8aYqTIg1A

   b.   Dr. Anthony Fauci:

"We know that people get infected and then get re-infected and people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months."

https://www.marketwatch.com/articles/Anthony-fauci-covid-19-biden-immunity-51658437525?shtied=nf-rss

50. As of August 2020, the Centers for Disease Control and Prevention ("CDC") guidance on COVID-19 protection changed to eliminate differentiation based on whether a person received vaccination or not. The CDC now concedes that so-called COVID-19 vaccines do not prevent those injected with same from contracting, suffering and/or spreading COVID-19.

51. The majority of persons now hospitalized for COVID-19 related issues have received vaccinations and caught the COVID-19 virus anyway.

52. Plaintiffs contend that the Defendants' "Mandatory Vaccine Policy" was based on false and deceptive claims that the vaccine was required to prevent the Plaintiffs from contracting the virus and spreading it to others, all of which the Defendants knew to be untrue.

53. The Commonwealth of Massachusetts terminated the "State of Emergency" caused by the COVID-19 epidemic effective June 15, 2021, and many employers, noting their error, have been rehiring former employees who were terminated for the same reasons that the Plaintiffs were.

54. The evidence now shows that COVID-19 vaccines did not afford the protection to the person injected or those they come into contact with and, in fact, may have both short- and long-term adverse effects on the injected person.

55. Defendants terminated the Plaintiffs for resisting being injected due to their sincerely held religious beliefs. Defendants also refused accommodations to Plaintiffs by use of face masks and periodic testing claiming same to be inferior to the vaccine.

56. Defendants have lauded the effectiveness of face masks and periodic testing in their policies and these measures were central to the rhetoric of Defendants to cause Plaintiffs to continue working through the pandemic in the face of exposure to themselves, family, friends and contacts to this hideous virus.

57. Defendants' instant degradation of face masks and periodic testing by labeling them as "inferior" and unacceptable accommodations, along with Defendants' unrealistic reliance on experimental vaccines, place Defendants' policies in question and now expose serious liberties taken by Defendants with the lives and well-being of Plaintiffs, their families and contacts.

58. Plaintiffs each suffered financially, emotionally, psychologically and lost reputation, as Defendants wrongly terminated them and claimed that Plaintiffs chose to voluntarily terminate their employment.

## CLAIMS FOR RELIEF

## COUNT II

## VIOLATION OF PLAINTIFFS' EQUAL PROTECTION AND TREATMENT RIGHTS

59. Paragraphs 1-58 are referenced and incorporated into Count I.

60. The actions of the Defendants denied the Plaintiffs their right to Equal Protection and equal treatment as guaranteed to them by the United States Constitution.

11

61. Pursuant to the Fourteenth Amendment to the United States Constitution, the Plaintiffs had a right to the equal protection and due process of laws.

62. The Plaintiffs had a right to be treated equally as their co-workers who elected to receive the COVID-19 vaccine.

63. The Plaintiffs were treated differently than other employees who opted to receive the COVID-19 vaccine because their sincerely held religious beliefs were not accommodated, they were placed on an un-paid administrative leave, and were ultimately let go from their employment.

## COUNT II

## VIOLATION OF PLAINTIFFS' SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS

64. Paragraphs 1-63 are referenced and incorporated into Count II.

65. The actions of the Defendants denied the Plaintiffs their right to Due Process of Law as guaranteed to them by the United States Constitution.

66. Plaintiffs have the right and protected interest under the First, Fourth and Fourteenth Amendment to the United States Constitution and Articles IV, X, XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights to be from the invasion of bodily integrity and to be free from unwanted medical intervention.

67. Because of these rights enjoyed by the Plaintiffs directly under both the United States Constitution and the Massachusetts Declaration of Rights as mentioned above, their substantive due process rights were denied when the Defendants mandated the COVID-19 vaccine upon the Plaintiffs, refused to honor their sincerely held religious beliefs and grant their Religious Exemption from said vaccine and wrongfully terminating them from their employment in retaliation.

68. Because of the Defendants' action and inactions as aforementioned, the Plaintiffs' procedural due process rights were denied and violated.

## COUNT III

## VIOLATION OF M.G.L. CHAPTER 151 AND VIOLATION OF TITLE VII

69. Paragraphs 1-68 are referenced and incorporated into Count III.

70. At all relevant times, Plaintiffs were engaged in protected activity under M.G.L. c. 151 and Title VII, upon which they suffered adverse employment action connected to such protected activity.

71. Defendants constructively terminated Plaintiffs' employment, which was motivated by retaliatory animus.

72. Defendants engaged in unlawful acts of subterfuge with specific intent to deprive the Plaintiffs.

**WHEREFORE, PLAINTIFFS PRAY THAT THIS HONORABLE COURT:**

Enter Judgment against the Defendants, finding that the Defendants' conduct was knowingly and intentionally in bad faith, with knowledge or reason to know that their acts would cause substantial hardship to the Plaintiffs, and against public policy and common law, for damages as follows:

1.      An amount to be determined at the trial of this matter but, at a minimum of Two Million Dollars ("$2,000,000.00") for general damages and costs;

2.      For additional damages in an amount to be determined for emotional distress, embarrassment, humiliation, anxiety, sleeplessness, and emotional trauma;

3.      For all reasonable attorneys' fees;

4.      For all applicable interests and related costs;

5.      For all costs of suit incurred herein; and

6.      For all other relief this Honorable Court deems meet and just.

### The Plaintiffs demand a trial by jury on all counts.

           Respectfully submitted,
           The Plaintiffs,
           LEANNA DEMARCO,
           GABRIELLA HOWARD,
           ALITA MULVEY,
           By their attorneys,

DATED: May 3, 2023

           */s/ Richard C. Chambers, Jr., Esq.*
           Richard C. Chambers, Jr., Esq.
           BBO#: 651251
           Chambers Law Office
           220 Broadway, Suite 404
           Lynnfield, MA 01940
           Office: (781) 581-2031
           Cell: (781) 363-1773
           Fax: (781) 581-8449
           Email: Richard@chamberslawoffice.com

DATED: May 3, 2023

           */s/ Joseph Spinale., Esq.*
           Joseph Spinale, Esq.
           BBO#: 548547
           Chambers Law Office
           220 Broadway, Suite 404
           Lynnfield, MA 01940
           Office: (781) 581-2031
           Cell: (781) 838-1411
           Fax: (781) 581-8449
           Email: Joe@chamberslawoffice.com