**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

| | |
|---|---|
| PATRICIA MCENTEE, CHRISTINE GEARIN, JULIA CARLSON, MICHELLE PROVITOLA, JULIE DIGIROLAMO, DOROTHY CLARKE, JEANNE ARSENAULT, STACEY BARNES, MARCO BUZZANGA, DONNA CIULLA, JENNIFER JASILEWICZ, LAUREN MELLO, ERIKA CARDINALE, JENNIFER CORDY, LAUREN HETRICK, MARIAM MOMJIAN, PATRICIA MURPHY, RACHEL SOUCIA, FELICIA DELA CRUZ, ANGELA CHANDLER, MARY DICKENS, DESIREE LETELLIER, MARY O'CONNOR, BROOKE GROMYKO, MIRLENE LUCAS, and AMY DURETTE,<br><br>      Plaintiffs,<br><br>v.<br><br>BETH ISRAEL LAHEY HEALTH, INC., BETH ISRAEL DEACONESS HOSPITAL-PLYMOUTH, INC., NORTHEAST HOSPITAL CORPORATION, BETH ISRAEL DEACONESS MEDICAL CENTER, INC., WINCHESTER HOSPITAL, BETH ISRAEL LAHEY HEALTH PRIMARY CARE, INC., MOUNT AUBURN HOSPITAL, and NORTHEAST PROFESSIONAL REGISTRY OF NURSES, INC.,<br><br>      Defendants. | No. 22-cv-11952-DLC |
| LEANNA DEMARCO, GABRIELLA HOWARD, and ALITA MULVEY,<br><br>      Plaintiffs,<br><br>v. | No. 23-cv-10974-DLC |

BETH ISRAEL LAHEY HEALTH, INC.,
NORTHEASTERN HOSPITAL
CORPORATION, and BETH ISRAEL
DEACONESS MEDICAL CENTER, INC.,

      Defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

CABELL, U.S.M.J.

In these two consolidated actions, former employees of several interconnected healthcare facilities are suing the facilities for allegedly terminating their employment based on the facilities' COVID-19 vaccination policy. Specifically, the plaintiffs allege that they each requested a religious exemption, were unjustly denied an exemption, and were terminated for refusing to be vaccinated despite the availability of reasonable accommodations. Presently before the court is a partial motion to dismiss filed by the defendants in *Demarco et al v. Beth Israel Lahey Health, Inc. et al*, No. 23-cv-10974-DLC (hereinafter the "Demarco action"). The defendants seek dismissal of two of the three counts in the Demarco complaint; the plaintiffs oppose. (D. 36, 38).[1] For the following reasons, the court grants the motion to dismiss.

Apart from some minor factual differences about the employment of each individual plaintiff, the allegations in the

---

[1] Unless otherwise noted, all citations to the docket are citations to docket entries in *McEntee et al v. Beth Israel Lahey Health, Inc. et al*, No. 22-cv-11952-DLC.

complaint in the Demarco action are virtually identical to the allegations in the amended complaint in *McEntee et al v. Beth Israel Lahey Health, Inc. et al*, No. 22-cv-11952-DLC (hereinafter the "McEntee action"). (D. 4; Demarco action D. 1). The Demarco complaint contains three counts: Count I[2] alleges a violation of plaintiffs' equal protection and treatment rights; Count II alleges a violation of plaintiffs' substantive and procedural due process rights; and Count III alleges a violation of M.G.L. Chapter 151 and violation of Title VII. (Demarco action D. 1, ¶¶ 59-72). The McEntee complaint contains identical counts, as well as a count of common-law assault. (D. 4, ¶¶ 126-141).

Through the instant motion, the defendants ask the court to dismiss Counts I and II of the Demarco complaint. This court previously dismissed the identical counts in the McEntee action. (D. 27); *McEntee v. Beth Israel Lahey Health, Inc.*, --- F. Supp. 3d ---, 2023 WL 4907617 (D. Mass. 2023). Specifically, Count I of the Demarco complaint is identical to Count II of the McEntee complaint aside from minor factual differences not at issue here, and Count II of the Demarco complaint is identical to Count III of the McEntee complaint.

The relevant highlights of McEntee dismissal order are as follows. First, as to the equal protection claim (Count II), the

---

[2] The first two counts in the Demarco complaint are both labeled "COUNT II." The court presumes that this is a typographical error and that the first count should be labeled "COUNT I."

McEntee complaint failed to allege that the defendants were government actors, as required to state a valid claim. *McEntee*, 2023 WL 4907617, at *3. Second, as to the same claim, the court considered and rejected the plaintiffs' argument that the defendants implemented the vaccination policy at issue essentially at the behest of the federal government. *Id.* at *3-*4. Third, the court considered whether the plaintiffs could assert either of their constitutional claims through the Massachusetts Civil Rights Act (MCRA), which does not require that the defendants be state actors. *Id.* at *4 (citing *Bell v. Mazza*, 474 N.E.2d 1111, 1115 (1985)). Ultimately, the court answered this question in the negative because the termination of at-will employment is not the sort of constitutional interference covered by the MCRA, and because the prospect of termination is not a threat, intimidation, or coercion within the meaning of the MCRA. *Id.* at *5.

The defendants argue that Counts I and II in the Demarco complaint suffer from the same deficiencies as the dismissed counts in the McEntee complaint. The court agrees. For their part, the plaintiffs in opposing the motion to dismiss essentially rehash their arguments about why the defendants were in fact acting on behalf of the federal government when they implemented their vaccination policy -- arguments that the court has already considered and rejected. Consequently, the court dismisses Counts

I and II of the Demarco complaint for the same reasons it dismissed Counts II and III of the McEntee complaint.

Independently, there is another significant reason why the plaintiffs' federal constitutional claims falter at the threshold. In its order on the motion to dismiss in the McEntee action, the court noted that, insofar as the plaintiffs asserted in their equal protection claim that the defendants acted on behalf of the federal government, "their claim properly arises under the Fifth Amendment rather than the Fourteenth Amendment [as alleged in both the McEntee and Demarco complaints] . . . [and] the proper cause of action would be that provided by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), rather than [42 U.S.C.] § 1983." *Id.* at *3 n.6. At the time, the court did not dwell on this distinction because *Bivens*, like § 1983, includes a government action requirement that the plaintiffs did not meet. *Id.* However, the availability of a private right of action is a threshold question that merits examination. *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 456 (1974).

After this court entered its dismissal order in *McEntee*, the First Circuit issued a decision that discussed the limits of *Bivens* actions in detail. In that case, two network and communications companies allegedly induced the Federal Bureau of Investigation (FBI) to search and seize a competitor's property through bad faith

reports that the competitor was engaged in piracy.  *Quinones-Pimentel v. Cannon*, 85 F.4th 63, 67 (1st Cir. 2023).  In the wake of the searches and seizures that resulted, the aggrieved competitor and its co-founders sued the Assistant United States Attorneys, FBI Special Agents, and others involved in the operation, asserting that *Bivens* provided them with a right of action to recover damages.  *Id.* at 67-68.  The First Circuit disagreed.

In reaching its decision, the First Circuit thoroughly examined the current landscape of *Bivens* actions.  It noted that, in recent jurisprudence, "the Supreme Court has . . . consistently refus[ed] to extend the *Bivens* doctrine to new settings.'"  *Id.* at 69 (quoting *González v. Vélez*, 864 F.3d 45, 52 (1st Cir. 2017)); *see also Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Thus, in evaluating whether *Bivens* is available as a right of action in a given case, courts conduct a two-step inquiry.  First, the court considers whether a case presents a new *Bivens* context, meaning whether it is "meaningfully different" from *Bivens* or two of its progeny cases:  *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980).  *Quinones-Pimental*, 85 F.4th at 69 (citing *Egbert v. Boule*, 596 U.S. 482, 492 (2022)).  If the

case does present a new *Bivens* context, the court must then consider "whether there are any 'special factors' counseling against extending *Bivens*." *Id.* at 70 (quoting *Egbert*, 596 U.S. at 492). If a case is meaningfully different from *Bivens*, *Davis*, and *Carlson* and there are special factors present, then *Bivens* relief is unavailable. *Id.* (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

A case may be meaningfully different from the *Bivens* trio if, for example, it concerns a different constitutional right than those cases or includes a new category of defendants. *Id.* at 69-70 (citing *Abbasi*, 582 U.S. at 139-40 and *Egbert*, 596 U.S. at 492). "'Special factors' . . . include, at least, 'alternative remedial structures,' such that if Congress has already given a would-be *Bivens* plaintiff a way to redress the constitutional violation, the *Bivens* suit cannot proceed." *Id.* at 70 (quoting *Egbert*, 596 U.S. at 493). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 140 S. Ct. at 743).

Applying the foregoing considerations here, it is clear that the present case is meaningfully different from *Bivens* and *Carlson*. In *Bivens*, "federal agents . . . allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations," in violation of the plaintiff's Fourth Amendment

rights.  *Egbert*, 596 U.S. at 490 (citing *Bivens*, 403 U.S. at 397).
In *Carlson*, "the Supreme Court extended *Bivens* to include an Eighth
Amendment violation in which federal prison officials failed to
provide adequate medical treatment for a prisoner's asthma,
resulting in his death." *Quinones-Pimental*, 85 F.4th at 69 (citing
*Carlson*, 446 U.S. at 16, 20-23).  The plaintiffs here do not assert
that the defendants have violated their Fourth or Eighth Amendment
rights, nor do they allege that the defendants have inflicted any
physical harm on them or threatened to do so.[3]

By contrast, this case arguably bears a passing resemblance
to *Davis* insofar as *Davis* was a discrimination case arising under
the Fifth Amendment's Equal Protection Clause.  *See id.* (citing
*Davis*, 442 U.S. at 229-31, 248-49).  There are, however,
significant differences between the two cases.  The plaintiff in
*Davis* worked as an administrative assistant for the defendant, a
United States Congressman.  *Davis*, 442 U.S. at 230.  Although the
defendant was more than satisfied with the plaintiff's work, he
nonetheless fired her because he decided it was crucial that the
person occupying the plaintiff's position be a man.  *Id.*  The

---

[3] The plaintiffs do assert that they "have the right and protected interest
under the First, Fourth and Fourteenth Amendment to the United States
Constitution . . . to be free from the invasion of bodily integrity and to be
free from unwanted medical intervention." (Demarco action D. 1, ¶ 66).  However,
the plaintiffs do not allege that the defendants directly violated their bodily
integrity.  Instead, the plaintiffs appear to assert that those rights entitled
them to refuse to be vaccinated against COVID-19, and therefore the defendants
violated their due process rights by terminating their employment based on their
vaccination refusal.  (*Id.* at ¶ 67).

Supreme Court held that the plaintiff could maintain a suit for damages against the defendant for sex discrimination. *Id.* at 248-49.

There are myriad differences between the present case and *Davis*. First, the plaintiffs in this case allege that the defendants discriminated against them based on religion, not sex.[4] *See Quinones-Pimental*, 85 F.4th at 69 (difference in the constitutional rights at issue is a meaningful difference). Second, it was incontrovertible that the complained-of conduct in *Davis* constituted sex discrimination, whereas the defendants here dispute that they discriminated against the plaintiffs on religious grounds. Finally, and perhaps most significantly, the defendant private healthcare facilities in this action are not clearly government actors, whereas the congressman in *Davis* was. *See id.* at 70 (new class of defendants is a meaningful difference). Considered together, these issues make the present case meaningfully different from *Davis*.

Having thus determined that this case is meaningfully different from *Bivens*, *Davis*, and *Carlson*, the remaining question

---

[4] The plaintiffs also purport to rely on the Equal Protection Clause in the Fourteenth Amendment rather than the Fifth Amendment, which could itself potentially be a meaningful difference from *Davis*. However, insofar as the plaintiffs assert that the defendants acted on behalf of the federal government, it would be the Fifth Amendment that applies, not the Fourteenth. As such, the court will treat the complaint as asserting a violation of the plaintiffs' Fifth Amendment rights for purposes of this analysis. This, of course, only helps the plaintiffs as to Count I. Count II asserts that the defendants deprived the plaintiffs of due process, which is a separate constitutional right altogether.

is whether any special factors counsel against extending *Bivens* to the context presented here.   As noted above, one such (determinative) special factor is the availability of a statutory right of action through which to redress the alleged constitutional violation.   *Id.* at 70 (quoting *Egbert*, 596 U.S. at 493).   Here, in Count III of the Demarco complaint, the plaintiffs have already identified two statutory schemes through which they can seek relief: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and M.G.L. c. 151B.[5]   Both of these schemes allow the plaintiffs to maintain an action against their former employers for alleged religious discrimination.   *See* 42 U.S.C. §§ 2000e-2(a)(1) & 2000e-5(f); M.G.L. c. 151B, §§ 4(1) & 9.   Because Congress (along with the Massachusetts legislature) has already given the plaintiffs a means to redress the alleged constitutional violations they assert, the plaintiffs are foreclosed from pressing their claims via *Bivens*.   *See Quinones-Pimental*, 85 F.4th at 70 (citing *Egbert*, 596 U.S. at 493).

In sum, the court GRANTS the motion to dismiss Counts I and II of the Demarco complaint, both for the reasons explained in the court's order dismissing Counts I, II, and III of the McEntee

---

[5] Count III purports to assert a claim under M.G.L. c. 151.  That chapter focuses on minimum fair wages.  *See* M.G.L. c. 151, § 1.  M.G.L. c. 151B, by contrast, concerns unlawful discrimination because of race, color, religious creed, national origin, ancestry, or sex.  *See* M.G.L. c. 151B, § 4.  The court presumes that the citation to Chapter 151 is a typographical error, and that the citation should be to Chapter 151B.

complaint and because the plaintiffs do not have a right of action under *Bivens* or 42 U.S.C. § 1983.  The Demarco action will proceed alongside the McEntee action as to Count III.


So ordered.                             /s/ Donald L. Cabell
                                        DONALD L. CABELL, U.S.M.J.

DATED:  February 8, 2024